Eugene P. Ramirez, Esq. (State Bar No. 134865)
 *Eugene.Ramirez@Manningkass.com*
Geoffrey Plowden, Esq. (State Bar No. 146602)
 *Geoffrey.Plowden@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, OFFICERS JAMES QUINATA, DAVIN AQUINO AND RODOLFO SARMIENTO

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEXTER HUBERT WHITE, *Plaintiff,* v. CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, OFFICERS JAMES QUINATA, DAVIN AQUINO AND RODOLFO SARMIENTO, *Defendants.* | CASE NO. CV19-00243DDP (RAO) **DEFENDANTS' TRIAL BRIEF** RESUMED TRIAL DATE: 8/28/23 TIME: 9:00 a.m. CRTRM: 9C, First Street Courthouse *U.S. DISTRICT COURT JUDGE DEAN D. PREGERSON* |

**TO THE HONORABLE COURT AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT JAMES QUINATA, DAVIN AQUINO AND RODOLFO SARMIENTO hereby submit the following Trial Brief in light of recent developments at trial.

I.

**FACTUAL SUMMARY OF THE EVIDENCE:**

Plaintiff Dexter White was shot in Los Angeles on January 11, 2018 at 11:30 am

1

after LAPD officers responded to an assault with a deadly weapon call, which was investigated by other officers. Plaintiff left that crime scene. Other LAPD Southwest Division officers were advised that the suspect was seen walking in the area of 41st and Walton. When officers pulled up to the corner, plaintiff was observed to match the description of the suspect. Officers commanded plaintiff to get on the ground, as the comments to the call indicated he had run off from the previous crime scene with a knife. Plaintiff then advised officers, "I'm trying to figure out if I wanna live or die today." Officers attempted for over a minute to get plaintiff to comply with commands to get down on the ground. Plaintiff refused. He then put his hands into the pockets of his pants. Officers shouted to take his hands from his pockets. He refused.

Six officers, in uniform, in marked black and white police cars, all with guns pointed at plaintiff, gave plaintiff time to comply. He refused. He then assumed a distinctive shooting stance, which plaintiff will deny, but which is seen in the videos in evidence, drew his right hand quickly from his pocket, holding a metallic object, cupped his left hand under his right and extended them at chest level, simulating he was shooting a gun at the defendants. Three officers (defendants Quinata, Sarmiento and Aquino) opened fire. Plaintiff was stuck in the shoulder and fell to the ground. A cell phone was located on the ground next to him. Officers summoned an ambulance, rendered aid and he was transported to a local hospital. He survived.

He contends the three defendant officers used excessive force and sustained damages.

## II.

## NEW COUNSEL WILL BE REPRESENTING DEFENDANTS.

Geoffrey Plowden of Manning Kass will be trial counsel for defendants for the remainder of the trial. Mr, Taslakian is unable to continue due to medical issues. Defendants request a short explanation to be given to the jury prior to resumption of trial, that due to medical reasons new counsel will take over and they are not to consider any

delays or appointment new counsel in their deliberations, nor hold such matters against the defendants in this case. Plaintiff was made aware of the substitution last week.

## III.

## THE COURT SHOULD PRECLUDE TESTIMONY FROM PLAINTIFF'S POLICE PRACTICES EXPERT TIMOTHY WILLIAMS AS TO MATTERS THE JURY IS TO DECIDE.

Based upon Mr. William's Rule 26 Report and deposition testimony, he intends to comment on the officers' pre-shooting tactics and offer the opinion that the officers' use of deadly force was unreasonable in this case. These comments are inappropriate in this trial as it is currently postured. Defendants respectfully request a Rule 402 hearing outside the presence of the jury, prior to his testimony, so that the trial may proceed smoothly.

    **a.**    An expert may generally testify about the procedures, policies, and standards used by law enforcement. See *Davis v. Mason Cnty.*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (testimony of police practices expert was admissible); *M.H. v. Cnty. of Alameda*, No. 11-CV-02868-JST, 2015 U.S. Dist. LEXIS 445, 2015 WL 54400 (N.D. Cal. Jan. 2, 2015) (noting that experts "may opine as to . . . generally accepted law enforcement standards, custom, or practice").

But "[w]hile experts may permissibly opine as to standard law enforcement practices and whether defendants' conduct is in accord with those practices, they may not offer legal conclusions that are solely within the Court's or the fact-finder's province." *Fontana v. City of Auburn*, No. C13-0245-JCC, 2014 U.S. Dist. LEXIS 117260, 2014 WL 4162528, at *6 (W.D. Wash. Aug. 21, 2014) (citing *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). "[A]n expert witness cannot give an opinion as to [their] legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter*, 373 F.3d at 1016. "Such an opinion does not aid the jury in making its decision; it merely attempts to substitute the expert's judgment for that of the jury[] or . . . the Court." *City of Auburn*,

2014 U.S. Dist. LEXIS 117260, 2014 WL 4162528, at *6. In the excessive force context, courts have held that an expert "may not express [their] opinion in terms of whether defendants 'violated plaintiff's Fourth Amendment rights,' used 'excessive force,' or used force that is consistent with a finding of excessive force. Those are impermissible legal conclusions." *City of Fed. Way*, 2014 U.S. Dist. LEXIS 6799, 2014 WL 202104, at *3. Accordingly, an expert should generally avoid terms that have a "specialized meaning in law" or otherwise "attempt to instruct the jury on the law." *United States v. Diaz*, 876 F.3d 1194, 1198-99 (9th Cir. 2017). an "expert witness cannot give an opinion as [*18] to her legal conclusion, i.e., an opinion on an ultimate issue of law."

    **b.**    As to pre-shooting tactics, they are irrelevant here as there is no negligence claim. Plaintiff's 42 USC § 1983 claim relates to a violation of his Fourth Amendment rights. The Fourth Amendment analysis is "narrower" and "plac[es] less emphasis on pre-shooting conduct" than the proper analysis applicable to the negligence claim. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018) and *Hayes v. City of San Diego*, 57 Cal.4th 622, 639, 160 Cal. Rptr. 3d 684, 305 P.3d 252 (2013))

    It is expected that Mr. Williams will comment upon Officer Quinata "leaving cover", or Officer Palacios drawing his weapon before placing his vehicle in park. None of these caused the officers to shoot, and they did not recklessly provoke Plaintiff into getting shot. As this is not a negligence case, these issues are improper for the jury to consider. As stated in *Han v. City of Folsom*, 551 Fed. Appx. 923:

> "our cases do not "permit a plaintiff to establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002). Even if an officer's pre-shooting conduct negligently provokes a suspect to violence, "that negligent [conduct] will not transform an otherwise reasonable subsequent use of force into a Fourth Amendment violation." *Id*. Also, officers need not use "the least intrusive means of responding to an exigent situation"; they need only act reasonably. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)."

4

# III.

# DEFENDANTS REQUEST TO INTRODUCE AN ENHANCED VIDEO AND/OR A STILL PHOTOGRAPH OF PLAINTIFF IN A DISTINCTIVE SHOOTING STANCE WHEN PLAINTIFF OPENS THE DOOR.

Plaintiff has been permitted to pause body worn camera videos in order to make his case. However, defendants ability to defend themselves critically rests with the ability to impeach plaintiff's witnesses with the same images, although slowed down or in still form. Defendants have two exhibits, provided in discovery to plaintiff and whose authenticity is not questioned. Exhibit 54b is a short slow motion video (not attached, but could be shown to the Court outside the presence of the jury) from Officer Aquino's body cam video (Ex. 54a – which is in evidence) and Exhibit 58 (a still photo of taken from Exhibit 54a). Unlike other cases, these defense exhibits directly impeach the plaintiff's anticipated testimony that he never assumed a shooting position and the central opinion of his police procedures expert (who was not shown the exhibits on purpose by plaintiff's counsel, but still opined plaintiff was never in a shooting position.) Defendants seek leave of Court to introduce the exhibits.

Exhibit 58 is the following photograph:



Furthermore, these exhibits demonstrate the defendant officers did not act with malice, oppression or in reckless disregard to plaintiff's rights. As the officers are being sued for punitive damages, the exhibits relate to their state of mind, an issue not considered in other courts' opinions excluding such still images.

Finally, the exhibits are necessary for the affirmative defense of qualified immunity. If the jury concludes Dexter White assumed a shooting position (via a post-verdict interrogatory), the record would support a finding in the officers' favor on the defense of qualified immunity. Absent such a determination from the finder of fact, the record would not be clear.

Defendants are cognizant the Court ruled in favor of plaintiff on his motion *in limine,* however the legal bases cited by Plaintiff were "rule of completeness" FRE 106 and FRE 403.  The Court ruled to exclude, so long as plaintiff does not open the door. The defendants respectfully request they allow the exhibits to be used to impeach Plaintiff and his expert who will testify that Plaintiff never assumed a shooting position,

thus opening the door.

Recent courts have held such evidence admissible: *Zeen v. Cnty. of Sonoma*, No. 17-CV-02056-LB, 2018 U.S. Dist. LEXIS 137744, 2018 WL 3769867, at *3 (N.D. Cal. Aug. 9, 2018) (slowed video of police encounter admissible at trial); *Lam v. City of San Jose*, 2015 U.S. Dist. LEXIS 152822, at *2 (N.D. Cal. 2015); *Hernandez v. City of Los Angeles*, No. 219CV00441CASGJSX, 2022 U.S. Dist. LEXIS 201321, 2022 WL 16551705, at *12 (C.D. Cal. Aug. 1, 2022) (allowing defendant city to show jury slowed and zoomed footage of non-party decedent driving with a gun before police opened fire).

*Hernandez* is directly on point here. Judge Snyder compared the still to the original and found no 403 issues. Same holds true here. The proffered still and slow motion exhibits are directly created from Exhibit 54a.

This Court may have been under the assumption defendants intended to freeze Plaintiff's movement for a millisecond, and thus give a false perception to the jury. In reality, Plaintiff was in a shooting position for several seconds and the slow-motion video (Ex. 54b) demonstrates much more than a millisecond of time.

Defendants are mindful of the Court's rulings. However, it is anticipated plaintiff and his expert will open the door by stating that Plaintiff never assumed a shooting position (thrusting his arms forward toward the officer with his left hand supporting the right hand as if he was pointing a gun). See, Ex. 58 above.  At that point, defendants' exhibits should be shown to the witness as it directly impeaches their testimony.

Respectfully submitted.

DATED: August 23, 2023         By: /s/ *Geoffrey Plowden*
                                   **GEOFFREY PLOWDEN**

*Attorneys for Defendants* CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, JAMES QUINATA, DAVIN AQUINO AND RODOLFO SARMIENTO